The facts and circumstances of this case, as I see them, are as follows:
During about the middle of May, 1938, Mr. W.A. Cotten, an agent of the defendant, called at the business place of Mr. T.H. Blackwell, plaintiff's husband and brother-in-law of the decedent, the decedent being a sister of plaintiff, for the purpose of collecting the premium due on a policy defendant had issued to Mr. Blackwell. During that call Mr. Cotten saw Miss Thibeau and offered to sell her a policy of insurance, which she refused, stating that she recently had been sick and that she was unemployed and could not pay the premiums. Mr. Blackwell then volunteered to assist in the payment of the premiums if the policy would be issued, and Miss Thibeau stated that she would consider the matter. Mr. Cotten testifies that at that time from all outward appearances Miss Thibeau was in perfect health and had recovered from any illness she might have had, believing that she had been suffering from a cold or some other minor ailment and not from any serious malady. This is not refuted.
On June 21, 1938, Miss Thibeau was admitted to the Charity Hospital at New Orleans, where her case was diagnosed as cancer of the right breast, and on June 23, 1938, her right breast was removed, the post operative diagnosis being malignant cancer. She remained in the hospital until July 6, when she was taken to Baton Rouge by relatives.
On July 7, the day after Miss Thibeau's return to Baton Rouge, Mr. Cotten called at Mr. Blackwell's place of business, at which time Blackwell asked if Miss Thibeau's application had been written, and Cotten answered: "No, I am going out this afternoon." That afternoon Mr. Cotten called at the home of Miss Thibeau, and in the presence of plaintiff and another lady, wrote Miss Thibeau's application for insurance, consisting in part of the following questions and answers:
"5. Have you ever undergone a surgical operation?" Answer: "Operated on for female trouble in 1932." *Page 69 
"6. Are you now in good health and free from all bodily ailments and diseases?" A. "Yes".
"7. For what ailment did you consult a physician in the last two years?" A. "None".
"8. Have you fully recovered from last illness?" A. "Yes".
"9. Give name and address of physicians consulted during last two years." A. "None".
Miss Thibeau also signed the following: "I hereby warrant that the statements and answers to the above questions are true and correct to the best of my knowledge. I understand that the policy applied for, to be issued when my membership is accepted, will not be in force until delivered to me while I am in good health."
The policy was issued on July 11, 1938, and presumably delivered to Miss Thibeau a few days thereafter. Copy of the application is endorsed on the back of the policy and forms a part thereof. The policy was offered in evidence by the plaintiff without reservation.
Miss Thibeau died on October 16, 1939, and defendant refused to honor the policy on her life for the reason that her death was due directly to a recurrence of the cancer from which she was suffering at the time of the execution of the application and the issuance of the policy, and that therefore she was not in sound bodily health at the time of application and the delivery of the policy, all contrary to her representations and warranty.
It is obvious that Miss Thibeau, her sister, the plaintiff herein, and her sister's husband, Mr. Blackwell, who admits paying some of the premiums on the insurance policy, if not all, deliberately concealed Miss Thibeau's condition, including the serious operation which she had undergone, from defendant's agent, Mr. Cotten, and to me it seems clear that this concealment of material fact was made for the purpose of obtaining the policy, which they well knew could not be obtained but for such concealment. The majority opinion implies that Mr. Cotten had sufficient knowledge of Miss Thibeau's condition to have been put on guard and to have ascertained with reasonable diligence the true condition of her health. In my opinion, such is not the case, because on both occasions when Mr. Cotten interviewed Miss Thibeau from all outside appearance she was in good health, and Miss Thibeau's remark during the first interview to the effect that she had been sick and was unemployed was not sufficient to warn Mr. Cotten that she was suffering from any serious malady. It is claimed that Miss Thibeau was never informed that she was suffering from cancer, but even so, being a mature woman, formerly married, she must have known that an operation for the removal of her breast indicated a serious condition which should not have been concealed from the agent if she were acting in good faith.
It is significant to note, also, that while Miss Thibeau's mother was still living, as well as another sister or sisters, she names Mrs. Blackwell, whose husband paid the premiums, as sole beneficiary under the policy.
In view of the foregoing facts and circumstances, I am convinced that the policy involved herein was obtained through deliberate misrepresentations constituting fraud and should therefore be decreed to be a nullity.
With reference to Act 97 of 1908, as amended, it is my understanding of the act that it only applies when the health of the applicant was known to the agent or when the agent should have ascertained, with reasonable diligence, the true condition of applicant's health, all based on the principle that knowledge of the agent is knowledge of the principal. I cannot believe, however, that the statute bars the plea of fraud in the vitiation of a contract such as in this case where deception and concealment were deliberately practiced upon the agent.
The defendant company was organized under Act 20 of the 2d Extra Session of 1935, a portion of which reads as follows:
"* * * Every policy or certificate hereafter issued by any corporation, association or society authorized under this Act, shall have plainly printed in red ink on the first page thereof the words `Assessment Plan', and shall specify the sum of money which it promises to pay upon each contingency insured against, which shall not be in excess of Five Thousand Dollars ($5,000.00), and the number of days after receipt of proof of the happening of such contingency in which such payment shall be made. Upon the occurrence of such contingency, unless thecontract shall have *Page 70 been voided by fraud, or by breach of its conditions, the corporation, association or society shall be obliged to the beneficiary for such payment at the time and to the maximum amount specified in the policy or certificate." § 9. (My italics.)
This portion of the act, in my opinion, shows that the contract can be voided on account of fraud.
For these reasons, I respectfully dissent from the opinion of the majority.